SO ORDERED.

Dated: February 26, 2016

Daniel P. Collins, Chief Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re | ) | Chapter 7 Proceedings |
|---|---|---|
| GREGORY LEVERTON, | ) | Case No: 2:13-bk-00908-DPC |
| Debtor. | ) | Adversary No. 2:13-ap-00232-DPC |
| SUSAN SMITH, | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION FOR STAY PENDING APPEAL** |
| v. | ) | |
| GREGORY LEVERTON, | ) | **[NOT FOR PUBLICATION]** |
| Defendant. | ) | |

Defendant, Gregory Leverton ("Debtor"), filed his Motion for Stay Pending Appeal ("Motion") on August 21, 2015 at Adversary Docket Entry ("DE") 141. Plaintiff, Susan Smith ("Plaintiff") and Debtor, sought to resolve their disputes in a mediation conducted by Bankruptcy Judge Eileen Hollowell. When the parties could not reach an agreement, on January 26, 2016, Plaintiff filed her response (DE 171) in opposition to the Motion. At a hearing on February 1, 2016, the parties argued their relative positions concerning the Motion but agreed that since they wished to pursue further settlement discussions, the Court should not rule on the Motion until the Court was informed of the need to do so. On February 10, 2016, the Court was advised the parties were unable to

resolve their differences. The Court then took this matter under advisement. For the reasons stated below, the Motion is denied.

**Background**

Following motion practice and a trial on Plaintiff's complaint seeking, among other things, denial of Debtor's discharge, on July 6, 2015 the Court entered judgment (the "Judgment") (DE 128) against Debtor denying his discharge pursuant to § 727(a)(2)(A). Debtor appealed the Judgment on August 21, 2015 (DE 140). Debtor's Motion requests that this Court issue a stay pending his appeal of the Judgment, largely because he is concerned Plaintiff will succeed in having his home sold at a sheriff's judgment execution sale.

**Applicable Law**

Motions for a stay pending appeal are ordinarily addressed first in the Bankruptcy Court. Fed. R. Bankr. P. 8007(a). In determining whether to grant a motion for stay pending appeal, bankruptcy courts are required to employ a four pronged analysis:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). The Ninth Circuit has noted that the Court must apply a sliding scale in determining a proper balancing of interests on a motion for stay pending appeal. *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011). District Judge Snow has written that, an appellant who "shows that the 'hardship balance . . . tips sharply' in its favor need not show a substantial likelihood of success on the merits; in that situation, 'serious questions going to the merits' will suffice." *FR 160 LLC v. Flagstaff Ranch Golf Club*, 2013 WL4507745 citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

1. Likelihood of Success on the Merits

This Court must first consider whether Debtor has made a strong showing that he will likely prevail on the merits of his appeal. Debtor suggests he has a "reasonable likelihood of success in this appeal" because he believes the court should have considered that his Baltimore Ravens season ticket licenses transferred to his brother on the eve of his bankruptcy "were of no significant value to the estate."[1] Debtor also contends this issue should be reviewed *de novo* on appeal.

First, Debtor failed at trial to demonstrate the value of the licenses at the date of transfer or that the licenses at issue were "of no significant value" at the time of the transfers. The only evidence of value was the $1,500 license price paid by Debtor in 1999. Importantly, the Court found the licenses to be Debtor's principal asset at the date of the transfers and that Debtor was an avid Ravens fan who transferred the licenses to his brother so he and his brother could be assured of their continued ability to enjoy the Ravens football tickets.[2] Debtor also failed to reveal the transfers in his bankruptcy filings or at his first meeting of creditors or in his responses to the trustee's questionnaire. Debtor's amendment came only after Plaintiff advised the Court of Debtor's non-disclosure. When Debtor finally amended his statement of financial affairs on June 26, 2013 (Administrative Case DE 27) to disclose the transfers, he did so in a misleading and factually incorrect manner calculated to mislead the Court and creditors into believing the transfers were for valuable consideration. This Court's factual findings in this regard will be reviewed on appeal under a "clearly erroneous" standard, not a *de novo* standard.

This Court finds Debtor has not made a strong showing that he is likely to prevail on the merits of his appeal. Rather, this Court finds that the District Court hearing the

---

[1] The Court found, among other things, that Debtor's transfers demonstrated his intent to hinder, delay or defraud his creditors, in violation of § 727(a)(2)(A).

[2] The Ravens won the Super Bowl on February 3, 2013, less than three months after the transfers and less than two weeks after Debtor's bankruptcy petition.

appeal will likely find this Court's factual findings were not clearly erroneous and, therefore, will affirm this Court's factual findings against Debtor.

2. Irreparable Harm

Debtor contends the only two present sources from which Plaintiff could recover on its Judgment are the non-exempt equity in his home and his job which produces some non-exempt wages. By way of a quasi-supersedeas bond, Debtor has offered to sequester 15% of his net wages. Under Arizona law, 25% of his net wages would be non-exempt. In other words, Debtor wants to have the ability to spend 85% of his net wages even though 10% of the wages spent would not be exempt from Plaintiff's post-judgment collection remedies. This Court finds Debtor has not proposed an appropriate bonding strategy relative to his wages nor has he cited any irreparable harm that would befall him if 25% of his net wages are executed upon by Plaintiff pending the outcome of this appeal.

Debtor's principal "irreparable harm" argument focuses on the potential loss of his home. Debtor is concerned that "Plaintiff has already recorded a lien against Debtor's home and presumably intends to foreclose upon that lien." Bankruptcy Judge Haines held that a judgment recorded in the county of the debtor's Arizona homestead does not create a lien against the homesteaded property. *In re Rand*, 400 B.R. 749, 754 (Bankr. D. Ariz. 2008). If Judge Haines is correct, Plaintiff could not "foreclose upon that lien."

Although neither party has supplied evidence of the present value of the home or the amount of the liens against the home, at oral argument on the Motion, Debtor's counsel suggested a value of $320,000 and a lien totaling $130,000 but also noted that, after paying the lien and homestead exemption and costs of sale, there is no significant equity, if any, for Plaintiff to realize upon. Like Debtor, this Court has significant doubt that a sheriff's execution sale would realize any value over the amount of the lien plus the Debtor's homestead exemption plus the costs of sale. Any harm Debtor might suffer is very speculative if a stay is not granted. More importantly, at most, Debtor could lose

his home to Plaintiff's post-judgment execution sale but be left with $150,000 representing the value of his homestead exemption under A.R.S. § 33-1101. It is that $150,000 value, not the home itself, which is exempt under Arizona law. Debtor's homestead exemption would not be impaired or "irreparably harmed" if a stay is not issued pending Debtor's appeal.

This Court finds Debtor has failed to persuade this Court that he will suffer irreparable harm if his Motion is denied.

### 3. Harm to Plaintiff

Debtor contends Plaintiff is "not at risk with regard to" Debtor's home because there is no evidence that property is declining in value. Debtor also offers to sequester 15% of his net wages (i.e. 60% of his non-exempt wages) pending the appeal. Debtor has failed to supply any evidence concerning the value of his home or the stability of the value of that home. Debtor has also failed to propose a means of preserving the status quo regarding 40% of his non-exempt wages. The Court finds Debtor fails to persuade the Court that he has satisfied the third prong of the *Nken* stay analysis.

### 4. Public Interest

Debtor contends public policy is served if Debtor is permitted to stay in his home pending his appeal. Arizona's homestead exemption is the applicable expression of public policy relative to a debtor's homestead. As noted above, the Arizona homestead exemption, at best, protects $150,000 of value in a home, not the home itself or a debtor's ability to reside in his home. Debtor fails to persuade the Court that he has satisfied the fourth prong of the stay test.

**Conclusion**

Even if this Court were to place little or no emphasis on the "merits" element of the *Nken* analysis, this Court finds that the *Leiva*-Perez sliding scale has not been satisfied by Debtor because he failed to persuade this Court that he will suffer any harm let alone

significant irreparable injury.  For the reasons stated above, the Court hereby denies the Debtor's Motion.

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC to:

Lawrence D. Hirsch
Jared Parker
Parker Schwartz, PLLC
7210 N 16th St, #330
Phoenix, AZ 85020

Lori L. Winkelman
Jason D. Curry
Amelia B. Valenzuela
Quarles & Brady LLP
One Renaissance Square
2 N Central Ave
Phoenix, AZ 85004